1
2
3
4
5
6
7               UNITED STATES DISTRICT COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9

10  CORDELL RABON,                    )   Case No. EDCV 13-1977 AB (FFM)
                                      )
11                 Petitioner,        )   FINAL REPORT AND
                                      )   RECOMMENDATION OF UNITED
12      v.                            )   STATES MAGISTRATE JUDGE
                                      )
13  GRVS,                             )
                                      )
14                 Respondent.        )
                                      )
15  _____  )

16          This Final Report and Recommendation is submitted to the Honorable André

17  Birotte, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and

18  General Order No. 194 of the United States District Court for the Central District

19  of California.  For the reasons discussed below, the Magistrate Judge recommends

20  that the Court grant respondent's Motion to Dismiss and dismiss the present

21  Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (the "Petition")

22  with prejudice as time-barred.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

# I. PROCEDURAL HISTORY

**A.    The State Court Proceedings.**

On October 13, 2009, a jury convicted petitioner of first degree murder (Cal. Penal Code § 187(a)).  (Clerk's Transcript ("CT") 354.)  The jury also found true several firearm allegations.  (CT 355-57.)  On January 15, 2010, the trial court sentenced petitioner to an aggregate term of fifty years to life in prison.  (CT 429.)

Petitioner appealed the judgment in the California Court of Appeal.  (Lodg. No. 3.)  On February 15, 2011, the Court of Appeal affirmed the judgment.  (Lodg. No. 6.)  Petitioner filed a petition for review in the California Supreme Court. (Lodg. No. 7.)  The California Supreme Court denied review on April 20, 2011. (Lodg. No. 8.)  The record does not indicate that petitioner filed a petition for writ of certiorari in the United States Supreme Court.

On July 25, 2013, petitioner constructively filed[1] a state habeas corpus petition in San Bernardino County Superior Court.  (Lodg. 9.)  On September 9, 2013, the Superior Court denied the petition for untimeliness and for raising claims unsuitable for habeas review.  (Lodg. No. 10.)

**B.    The Instant Proceedings.**

Petitioner constructively filed the instant Petition on October 24, 2013.  On November 26, 2013, respondent filed a motion to dismiss the Petition ("MTD") as untimely.  (Docket No. 5.)  On February 27, 2014, petitioner sought the appointment of a next friend or guardian ad litem by reason of his mental illness. (Docket No. 16.)

---

[1]  A *pro se* petitioner's relevant filings may be construed as filed on the date they were submitted to prison authorities for mailing, under the prison "mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988).  *See Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003); *Huizar v. Carey*, 273 F.3d 1220, 1222-23 (9th Cir. 2001).

On April 1, 2014, the Court granted petitioner until May 30, 2014, to oppose the Motion.  (Docket No. 20.)  On July 22, 2014, the Court granted petitioner until August 29, 2014 to file papers setting forth all evidence supporting his claim that he suffers from a mental illness preventing him from understanding and responding to the Court's orders.  (Docket No. 25.)

On May 2, 2014, petitioner filed papers the Court construes as an opposition ("Oppo.") to the Motion.  (Docket No. 21.)  On August 29, 2014, plaintiff filed papers the Court construes as a response (the "GAL Resp.") to the Court's July 22, 2014 order regarding plaintiff's guardian ad litem application.  (Docket No. 27.)  Respondent did not reply to either filing.

The undersigned issued a Report and Recommendation, recommending that the Motion to Dismiss be granted.  Petitioner filed objections to the Report and Recommendation on October 23, 2014.

## II.  DISCUSSION

### A.  The Petition Is Facially Untimely.

The Petition was filed after the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law.  Accordingly, AEDPA's timeliness provisions apply, including a one-year limitations period which is subject to both statutory and equitable tolling.[2]  *See* 28 U.S.C. § 2244(d)(1) ("Section

---

[2]  The limitations period is calculated in light of the provisions of Rule 6(a) of the Federal Rules of Civil Procedure ("Rules"), which provides that in computing any period of time prescribed or allowed by the Rules, local rules, federal statute, or court order, the day of the act, event, or default from which the designated period of time begins to run must not be included.  The last day of the period must be included, unless it is a Saturday, a Sunday, or a legal holiday.  *See Duncan v. Walker*, 533 U.S. 167, 170, 121 S. Ct. 2120, 150 L. Ed. 251 (2001); *Patterson v. Stewart*, 251 F.3d 1243, 1245-46 (9th Cir. 2001).

3

2244(d)(1)")); *Evans v. Chavis*, 546 U.S. 189, 191, 126 S. Ct. 846, 163 L. Ed. 2d 684 (2006); *Pace v. DiGuglielmo*, 544 U.S. 408, 410, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005); *Lindh v. Murphy*, 521 U.S. 320, 326-27, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997); *Tillema v. Long*, 253 F.3d 494, 498 (9th Cir. 2001).

For prisoners like petitioner, whose convictions became final post-AEDPA, the one-year period starts running from the latest of four alternative dates set forth in Section 2244(d)(1)(A)-(D). *See*, *e.g.*, *Patterson*, 251 F.3d at 1245-47. The provision which applies in this case is set forth in Section 2244(d)(1)(A). That subparagraph provides that the one-year period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."

Where, as here, the challenged judgment was affirmed by the state's highest court, the period of direct review ends either when the petitioner has failed to file a *certiorari* petition in the United States Supreme Court and the 90-day period for doing so has expired, or when the Supreme Court has ruled on a filed petition. *See Clay v. United States*, 537 U.S. 522, 527-32 and nn.3-4, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003); *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001).

In this case, petitioner does not appear to have filed a *certiorari* petition in the United States Supreme Court. Thus, under section 2244(d)(1)(A), petitioner's conviction became final 90 days after the California Supreme Court's April 20, 2011 denial of his petition for review. *See Clay*, 537 U.S. at 527-32 and nn.3, 4; 28 U.S.C. § 2101(d); Sup. Ct. R. 13.1. Therefore, petitioner's conviction became final on July 19, 2011.

Petitioner then had one year, until July 18, 2012, to file a petition for writ of habeas corpus in federal court. *See* 28 U.S.C. §2244(d). The instant Petition was not filed until October 24, 2013, well past the expiration of the statute of limitations. Consequently, the Petition should be denied as untimely, absent statutory or equitable tolling.

1    **B.      Petitioner Is Not Entitled To Statutory Tolling.**

2         28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly

3    filed application for state post-conviction or other collateral review with respect to

4    the pertinent judgment or claim is pending shall not be counted toward any period

5    of limitation under this subsection."  However, the interval of time between when

6    the judgment became final and the petitioner filed his first state collateral challenge

7    cannot be tolled because no case is "pending."  *Nino v. Galaza*, 183 F.3d 1003,

8    1006 (9th Cir. 1999) ("AEDPA's statute of limitations is not tolled from the time a

9    final decision is issued on direct state appeal and the time the first state collateral

10   challenge is filed because there is no case 'pending' during that interval"),

11   abrogated on other grounds as stated in *Nedds v. Calderon*, 678 F.3d 777, 781 (9th

12   Cir. 2012).  Furthermore, tolling under Section 2244(d)(2) cannot be used to revive

13   a limitations period that has already expired.  *See Ferguson v. Palmateer*, 321 F.3d

14   820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the

15   limitations period that has ended before the state petition was filed"); *Jiminez v.*

16   *Rice*, 276 F.3d 478, 482 (9th Cir. 2001) (where petitioner filed state

17   post-conviction relief proceeding "after the AEDPA statute of limitations ended[,] .

18   . . [t]hat delay resulted in an absolute time bar to refiling . . .").

19        Here, petitioner did not file a state habeas petition until July 25, 2013.  The

20   AEDPA limitations period had expired more than a year previously, on July 18,

21   2012.  Thus, petitioner is not entitled to statutory tolling.  *Ferguson*, 321 F.3d at

22   823.

23   **C.      Petitioner is Not Entitled to Equitable Tolling.**

24        The AEDPA limitations period is subject to equitable tolling if extraordinary

25   circumstances beyond the petitioner's control made timely filing of a federal

26   habeas petition impossible *and* the petitioner acted diligently in pursuing his rights.

27   *Holland v. Florida*, 130 S. Ct. 2549, 2562, 177 L. Ed. 2d 130 (2010).

28

1  The petitioner must demonstrate a causal relationship between the extraordinary
2  circumstances and the lateness of the filing.  *Spitsyn v. Moore*, 345 F.3d 796, 799
3  (9th Cir. 2003).  If the petitioner "has not exercised reasonable deligence [*sic*] in
4  attempting to file, after the extraordinary circumstances began," he is not entitled
5  to equitable tolling.  *Id.* at 802 (internal citations omitted).

6      The petitioner bears the burden of showing that equitable tolling applies.
7  *Pace*, 544 U.S. at 418; *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).
8  The threshold to trigger equitable tolling is very high.  *Miranda*, 292 F.3d at 1066.
9  Determining whether a circumstance is extraordinary enough to support equitable
10  tolling is a fact-specific inquiry.  *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir.
11  2001).

12      Petitioner contends that he is entitled to equitable tolling for his untimely
13  claims because of his unawareness of AEDPA.  His unawareness of AEDPA, he
14  alleges, resulted from illiteracy, a developmental disability, and a mental disorder.
15  (Oppo. at 3.)  In addition, he could not find anyone to assist him in filing his
16  Petition.  (*Id.*)  In support of his allegations, petitioner attaches records bearing on
17  his mental state while incarcerated.  (Oppo. Attach. 2; *see also* GAL Resp. Exs. B-
18  F.)

19      Petitioner's allegations and evidence are insufficient to establish equitable
20  tolling.  To merit equitable tolling based on a mental impairment, petitioner must
21  first show that the mental impairment was an "extraordinary circumstance" beyond
22  his control, in that it was so severe that either:

23          (a) he was unable, rationally or factually, to personally
24          understand the need to timely file, or
25          (b) his mental state rendered him unable personally to
26          prepare a habeas petition and effectuate its filing.

27  / / /
28  / / /

6

1    *Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010); *Stancle v. Clay*, 692 F.3d

2    948, 958-59 (9th Cir. 2012).  In addition, he must demonstrate "diligence in

3    pursuing the claims to the extent he could understand them, but that the mental

4    impairment made it impossible to meet the filing deadline under the totality of the

5    circumstances, including reasonably available access to assistance." *Bills*, 628

6    F.3d at 1100; *see also Laws v. Lamarque*, 351 F.3d 919, 922-23 (if "petitioner's

7    mental incompetence *in fact* caused him to fail to meet the AEDPA filing

8    deadline," equitable tolling is warranted (emphasis added)).  Here, petitioner's

9    evidence suggests although he may be able meet the *Bills* test's first prong

10   (extraordinary circumstances), he cannot meet the second prong (diligence).

11          According to a June 14, 2012 assessment, as a youth petitioner was in

12   special education because of ADHD and learning disabilities.  He dropped out of

13   school in the 12th grade.  (Oppo. Attach 2, p. 5; GAL Resp. Ex. B, p. 2.)  In prison,

14   petitioner was placed in an education program.  He could do basic math, but had

15   difficulties with attention and concentration and required assistance with reading

16   and writing.  (GAL Resp. Ex. B, pp. 2, 3, 5.)  Petitioner received daily assistance

17   from the "DDP" officer with CDCR forms and with writing.  His cellmate filled

18   out sick call slips for him and often helped him read and write letters.  (*Id.* at 2, 3.)

19   He did not know what a "602" was, but understood how to make purchases from

20   the prison canteen.  (*Id.* at 3, 4.)

21          Notably, in the June 2012 assessment, petitioner reported that one of his

22   goals while incarcerated was to "'*try to get out through an appeal* . . . .'"  (GAL

23   Resp. Ex. B, p. 2 (emphasis added).)  In addition, he reported that "'[the DDP

24   officer] helps me with everything.  *He helps me write to my lawyer, read CDCR*

25   *paperwork,* and helped get mom approved for visiting.'"  (*Id.* at 3 (emphasis

26   added).)

27   / / /

28   / / /

1    Petitioner's remaining records date from November 2012 and December

2  2013, well after the AEDPA limitations period expired.  (Oppo. Attach. 2, p. 9 *et*

3  *seq.*; GAL Resp. Exs. C-F.)  Therefore, they have limited, if any, relevance to

4  whether an "extraordinary circumstance" existed during the limitations period.

5  Moreover, the records indicate that although plaintiff has some psychiatric

6  symptoms (hallucinations and mood instability), they are intermittent and managed

7  with medication and cognitive behavioral therapy.  (*See* GAL Resp. Ex. D, pp. 1-2,

8  Ex. E, pp. 1, 7, Ex. F, p. 1.)  In addition, in December 2013, a clinician noted that

9  petitioner neither required "highly structured inpatient psychiatric care" nor

10  demonstrated "chronic psychiatric symptoms" that prevented adequate levels of

11  functioning.  (*Id.*, Ex. C, p. 1.)

12    The Court is not convinced that petitioner was "*unable*," rationally or

13  factually, to understand the need to timely file an AEDPA petition.  Nothing in the

14  records suggest that either his learning disabilities, ADHD, or psychiatric issues

15  were severe enough to prevent him from comprehending the need to file a timely

16  petition.  He was not so delusional or mood-disordered that he could not function

17  adequately or comprehend reality.  *Cf. Forbess v. Franke*, 749 F.3d 837, 840 (9th

18  Cir. 2014) (petitioner's delusional belief that he was working for FBI, which would

19  release him once it arrested his ex-wife for drug trafficking, prevented petitioner

20  from rationally understanding need to file timely habeas petition).  And although

21  petitioner struggled with learning, he was in school, could do basic math, and could

22  understand and communicate with prison officials, other inmates, and others –

23  including, apparently, his lawyer – regarding various issues bearing on his

24  imprisonment.

25    In fact, petitioner's reference to communications with his lawyer and his

26  desire to file an appeal to get out of prison strongly suggests that he was capable of

27  grasping basic legal concepts, such as the need to timely pursue post-conviction

28  relief.  *See Yow Ming Meh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014) (finding

1  that petitioner's mental impairment was not so severe it prevented awareness of

2  basic legal concepts, where, *inter alia*, petitioner was able to make "requests for

3  assistance" from appeals coordinator and interpreter at administrative hearings and

4  requested assisted from public defender after conviction).

5      Petitioner may have been *unaware* of AEDPA, as he alleges. However, that is

6  not relevant herein.  First, the question is his ability to comprehend the *concept* of

7  the AEDPA deadline, not his awareness of the deadline.  Second, neither ignorance

8  of the law, nor lack of legal experience or assistance, nor misunderstanding of

9  habeas law's complexities is a sufficient basis for equitable tolling.  *See Raspberry*

10 *v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a pro se petitioner's lack of legal

11 sophistication is not, by itself, an extraordinary circumstance warranting equitable

12 tolling" of AEDPA's limitation period); *see also Waldron-Ramsey v. Pacholke*, 556

13 F.3d 1008, 1013 n.4 (9th Cir. 2009) ("[A] *pro se* petitioner's confusion or ignorance

14 of the law is not, itself, a circumstance warranting equitable tolling").

15     Petitioner's records do indicate that because of his learning disabilities, he

16 has difficulty with reading and writing.  The Court will therefore assume *arguendo*

17 that petitioner demonstrates that he was unable "personally" to prepare a habeas

18 petition and effectuate its filing.  *Bills*, 628 F.2d at 1100.  Under *Bills*, therefore,

19 petitioner arguably demonstrates that his mental impairment was an "extraordinary

20 circumstance" beyond his control.  *See id.* at 1099-1100; *but see Raspberry*, *supra*;

21 *see also Turner v. Johnson*, 177 F.3d 390, 391 (5th Cir. 1999) (lack of familiarity

22 with legal process, "*due to illiteracy* or any other reason[,]" does not merit equitable

23 tolling of AEDPA limitations period (emphasis added)); *Hughes v. Idaho State Bd.*

24 *of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (holding pre-AEDPA that pro se

25 habeas petitioner's illiteracy and lack of legal assistance were not sufficient "cause"

26 to excuse his failure to file a state collateral challenge in a timely manner).

27

28

1    However, petitioner cannot demonstrate that despite his diligence, his mental

2  impairments prevented him from filing a timely petition.  "With respect to the

3  necessary diligence, the petitioner must diligently seek assistance and exploit

4  whatever assistance is reasonably available." *Bills*, 628 F.2d at 1101; *Stancle*, 692

5  F.3d at 959.  "The court should examine whether the petitioner's mental impairment

6  prevented him from locating assistance or communicating with or sufficiently

7  supervising any assistance actually found." *Bills*, 628 F.2d at 1101.  Such

8  assistance may include inmates, library personal, or other sources.  *Id.* (citing

9  *Mendoza v. Carey*, 449 F.3d 1065, 1070 (9th Cir. 2006)).  "Some of the same

10  considerations used to review the first prong of *Bills* are also relevant to the analysis

11  of the second prong, because the second requires a review of the totality of the

12  circumstances." *Stancle*, 692 F.3d at 959.

13    The record demonstrates that petitioner's learning disabilities and other

14  mental impairments did not prevent him from communicating, albeit indirectly,

15  with counsel.  Nor did his mental impairments prevent him from seeking and

16  obtaining assistance from prison personnel and other inmates with reading, writing,

17  personal matters, and prison administrative issues.  In fact, in June 2012 – *i.e.*,

18  during the limitations period – he had daily assistance from a prison official, who

19  was able to read petitioner's paperwork, fill out his forms, and write to his lawyer

20  for him.  And as discussed above, during that period, petitioner was capable of

21  grasping the concept of filing a timely petition.

22    Thus, there is no evidence that petitioner's learning disabilities and other

23  impairments prevented him from seeking or locating assistance in filing a petition.

24  Nor is there evidence that his mental impairments would have prevented him from

25  communicating with or supervising anyone whom he found to assist him.

26  Accordingly, petitioner cannot meet *Bills*' second prong, as he cannot demonstrate

27  that his mental impairments were the "but-for" cause of his untimely filing.  *See*

28  / / /

1    Bills, 628 F.3d at 1100.[3]

2

3    [3] In his objections to the Report and Recommendation, petitioner declares that
4    beginning with his October 2010 incarceration, various factors bearing on his
5    mental health prevented him from understanding his legal duties, grasping the
6    concept of a deadline, interacting with others, and communicating his thoughts.
7    (Objections at 23-26.)  These alleged factors included depression, paranoia, severe
medication side effects, and a traumatic brain injury suffered at age six.  (*Id.*)
8    Accordingly, petitioner asserts, he was incapable not only of filing his own
petition, but also of supervising anyone in filing a petition on his behalf.  (*Id.* at 16,
9    23-26.)  As discussed at length, *supra*, petitioner's medical records paint a very
10   different picture of his cognitive, emotional, and interpersonal functioning.  The
Court further notes that his records do not include any reports of severe medication
11   side effects.  In addition, his treating sources generally reported that plaintiff's
functioning was within normal limits or "fair" to "good."  (*See generally* Oppo.
12   Attachs.; GAL Resp. Exs.; Objections Ex. A.)  Furthermore, his records indicate
13   that he can understand what is told to him and is capable of communicating his
needs and goals to others.  (*See generally id.*; *see also* Objections at 19.)
14   Petitioner's new assertions of severely limited functioning are simply not credible
15   in light of his medical records.  Accordingly, they fail to alter the Court's
conclusion that petitioner has not demonstrated diligence.  *See Laws*, 351 F.3d at
16   924 ("[A] petitioner's statement, even if sworn, need not convince a court that
17   equitable tolling is justified should countervailing evidence be introduced").

18       Petitioner also asserts that he did not have legal assistance from DDP
19   officers or library personnel.  In addition, there was no accommodation for DDP
inmates in the library until March 2014.  (Objection at 10-13, 24, 25.)  Prisoners
20   are not entitled to legal assistance, from prison library staff or others, with respect
to their legal proceedings, including postconviction proceedings.  *See Lewis v.*
21   *Casey*, 518 U.S. 343, 350-51, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); *see also*
22   *Bonin v. Calderon*, 77 F.3d 1155, 1159 (9th Cir. 1996) (no general constitutional
right to counsel in postconviction proceedings).  Accordingly, the lack of legal
23   assistance has no bearing on petitioner's equitable tolling claim.  Furthermore,
24   petitioner was able to file a state habeas petition and the instant Petition prior to
March 2014.  Therefore, the lack of DDP accommodation in the library could not
25   have been the cause of his untimeliness.  *See Gaston v. Palmer*, 417 F.3d 1030,
26   1035 (9th Cir. 2010).

27       Finally, the Court finds that petitioner is not entitled to an evidentiary
hearing on his contention that he is entitled to equitable tolling, as the records he
28

(continued...)

1   In sum, petitioner has not shown that equitable tolling is warranted.

2   Accordingly, the Petition is untimely.[4]

3

4   ### III.  RECOMMENDATION

5   The Magistrate Judge therefore recommends that the Court issue an order: (1)

6   approving and adopting this Final Report and Recommendation; (2) granting

7   respondent's Motion to Dismiss; and (3) directing that judgment be entered denying

8   the Petition with prejudice as time-barred.

9

10   DATED: November 6, 2014              /S/ FREDERICK F. MUMM

11                                        FREDERICK F. MUMM
                                         United States Magistrate Judge

12

13

14   _____

15   [3](...continued)
     has submitted are sufficient to evaluate his claims regarding his mental

16   impairments.  *See Roberts v. Marshall*, 627 F.3d 768, 772-73 (9th Cir. 2010).

17   Accordingly, the Court denies petitioner's request for an evidentiary hearing.

18   [4]  Petitioner brings a single claim of error in his Petition:  that the prosecutor

19   improperly removed a prospective juror because of her race.  (Pet. at 5, 5A (citing
     *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986)).)

20   Although petitioner brought an insufficiency of the evidence claim in his state

21   habeas petition (*see* Lodg. No. 9), he does not raise that claim in the Petition, either
     as a stand-alone claim or in passing.  (*See* Pet. at 5, 5A-5B, 6.)  Nor does petitioner

22   claim that he is actually innocent of the crime for which he was convicted.  (*See*

23   *id.*)  Therefore, the Court need not consider whether petitioner has made a
     sufficient showing of actual innocence in order to merit an equitable exception to

24   AEDPA's statute of limitations.  *See Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct.

25   851, 130 L. Ed. 2d 808 (1995); *Larsen v. Soto*, 742 F.3d 1083, 1095 (9th Cir.
     2013).  In any case, as defendant argues (MTD at 8), petitioner would not be

26   entitled to such an exception, as he fails to present "new reliable evidence . . . not

27   presented at trial" (*Schlup*, 513 U.S. at 324) that is "sufficient to convince a federal
     court that a failure to entertain his claim would constitute a fundamental

28   miscarriage of justice" (*Larsen*, 742 F.3d at 1095).